## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

Civil Action No: 04-Cv-11318-RCL

|  |  |  |
|---|---|---|
| MARY KENNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTEGRATED DISABILITY | ) | |
| RESOURCES, Inc. and | ) | |
| HANCOCK LIFE INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT

The Plaintiff, Mary Kenny, submits this Memorandum of Law in support of her Motion for Judgment.

### ISSUES ON APPEAL

The Plaintiff prays that the Honorable Court finds the decision of the Defendants to terminate her Long Term Disability benefits unreasonable.

### PROCEDURAL HISTORY

- Mary Kenny, as a qualified employee of the John Hancock Financial Services, filed an application for Long Term Disability (LTD) benefits on October 15, 1991 alleging total disability commencing as of March 15, 1991 due chronic fatigue immune dysfunction syndrome (CFIDS). *[ar. at 0116-0118]*. Mary Kenny's application for long term

disability benefits was approved,

- Mary Kenny was additionally approved for Social Security Disability benefits on June 21, 1993. *[ar. at 0396]*.

- On June 2, 2003, Ms. Kenny was informed that her LTD benefits were to be terminated as of that day by defendant, Integrated DisAbility Resources. *[ar. at 0967-0970]*.

- This denial was appealed by Ms. Kenny on November 18, 2003. *[ar. at 0975]*.

- New medical records were submitted to the defendant, Integrated DisAbility Resources on November 24, 2003. *[ar. at 0986]*.

- The defendant Integrated DisAbility Resources was notified on December 1, 2003 that Ms. Kenny had no more medical evidence to submit.

- Considering circumstances most favorable to the Defendants, Ms. Kenney appeal was deem denied on January 29, 2004.

- Pursuant to the Employment Retirement Income Security Act (ERISA) Act of 1974 (29 U.S.C. §§1001 ET SEQ) this action was filed in United States District Court on June 15, 2004.

## STATEMENT OF FACTS

### A. Personal Background

Mary Kenny of 15 Walnut Avenue, North Andover, Massachusetts was born on March 20, 1959 and is married with two sons.

### B. Education

Ms. Kenny holds an Associates Degree in Business Administration.

### C. Relevant Work History

Ms. Kenny had been employed at John Hancock Financial Services as a computer programmer "responsible for determining specification changes to computer programs, coding

2

and testing these changes. Job involves working with computer printed output, documentation and other personnel in the company". *[ar. at 0119]*.

## D. Medical and Claim History

### 1.) Claimed Impairment – Chronic Fatigue Syndrome

"A condition characterized by disabling fatigue, accompanied by a constellation of symptoms, including muscle pain, multijoint pain without swelling, painful cervical or axillary adenopathy, sore throat, headache, impaired memory or concentration, unrefreshing sleep, and postexertional malaise. The diagnosis is one of exclusion; the cause remains obscure. Therapy is directed to relief of symptoms. Psychiatric intervention may be helpful if depression or anxiety accompanies the condition. The disorder often persists for years; spontaneous resolution occurs in fewer than 40% of cases." *Mosby's Medical Dictionary, 5th Ed. 1998, pg. 336.* "

### 2.) Claimed Impairment – Fibromyalgia

"The fibromyalgia syndromes (myofascial pain syndromes, fibromyositis) are a group of disorders characterized by achy pain and stiffness in soft tissues, including muscles, tendons (which attach muscles to bones), and ligaments (which attach bones to each other). The pain and stiffness (fibromyalgia) may occur throughout the body or may be restricted to certain locations, as in the myofascial pain syndromes. Fibromyalgia throughout the body is more common in women than in men. Men are more likely to develop myofascial pain or fibromyalgia in a particular area, such as a shoulder, from an occupational or recreational muscle strain. Fibromyalgia isn't dangerous or life threatening, but persistent symptoms can be very disruptive." *The Merck Manual of Medical Information, Home Ed. 1998, pg. 250.* "Stiffness and pain usually develop gradually in the primary fibromyalgia syndrome, the symptoms are usually

3

aches; in fibromyalgia confined to a specific area, the pain may be more sudden and sharp. In both, the pain usually worsens with fatigue, straining, or overuse. Specific areas may be tender when pressure is applied. Muscle tightness and spasms may occur. Although any fibrous tissue or muscle may be affected, those of the neck, shoulders, chest and rib cage, lower back, and thighs are especially likely to be painful." *Id at 250-251.* "The diagnosis of fibromyalgia syndromes is based upon the pattern and location of the pain. Doctors determine whether pressure produces pain in one spot (tender points) or whether the pain seems to travel (refer) to other areas (trigger points)." *Id.*


### 3.) Supporting Medical Evidence

The voluminous administrative record contains multiple treating source records which established Ms. Kenny was disabled within the provisions of the policy between 1991 and June 2, 2003, as the Defendants paid all benefits set forth in the LTD policy during that relevant period. The records of the most importance during that twelve year period of undisputed disability are the opinions of two independent medical examiners who were paid by the Defendants to review the Plaintiff's level of medical impairment.


The first examination was on March 13, 1995, when Ms. Kenny was examined by Katherine McGown, MD, a board certified infectious disease specialist at the Faulkner Hospital, who concluded that "[i] think that in the past her employer has attempted to assist her in scheduling flexible hours and allowing her to work from home and that she has demonstrated she is unable to perform, even under these optimal circumstances, what one would consider sedentary part-time light work. In addition, she does not seem to have demonstrated any improvement since the onset of her illness in 1987 and this carries a very poor prognosis for the

4

future." *[ar. at 0496]*. Dr. McGown further concluded that "the patient has prominent cognitive dysfunction, profound weakness, fatigue and her symptoms are exacerbated by multiple environmental factors such as dust, fumes, noise, odors which are certainly made more prevalent by poor ventilation. Sudden temperature changes and stress also exacerbate her symptoms. ... As per my dictation, I suspect that Mary Kenny is permanently disabled secondary to CFIDS." *[ar. at 0498]*.

The second examination was performed by Donna Felsenstein, MD, the Director of the Genito-Infectious Disease Unit of the Massachusetts General Hospital, who summarized that Ms. Kenny is "a 34 year old woman who has been diagnosed with the chronic fatigue syndrome. There are multiple statements in the chart from her physicians reiterating her symptoms. These symptoms would be suggestive of the chronic fatigue syndrome and/or a chemical hypersensitivity syndrome. In my meeting with Ms. Kenny, again she reiterated all of the symptoms which she has been experiencing in a similar manner. The symptoms that Ms. Kenny experiences would render her unable to pursue her previous work. In addition, because of the history of unpredictability of her symptoms, it would be difficult for her to maintain any ongoing work. ... The diagnosis of chronic fatigue syndrome and chemical sensitivity are extremely difficult ones to make. They are based on a suggestive history as well as exclusion of other etiologies. Such a history is documented in the patient's records and in her physician's notes." *[ar. at 0570-0571]*. It appears the defendant, John Hancock, was unhappy with Dr. Felsenstein opinion and attempted to have her amend it. *[ar. at 0579-581, 0592, 0593]*. In response Dr. Felsenstein commented to John Hancock that "she wondered whether she would want to perform any more IME's, given her experience with this case" and suggested that perhaps John Hancock might seek another IME opinion in the future, if John Hancock were not satisfied with her review. *[ar. at 0595]*.

5

The Administrative record further contains the following medical evidence which record the severity of Ms. Kenny's medical impairments just prior too and during the relevant period when the Defendants terminated benefits.

At the behest of the defendant, Integrated DisAbility Resources (IDR), Natasha Shah, MD, the primary care physician of ten years, completed a residual functional capacity (RFC) form on August 9, 2001 in which she opined that Ms. Kenny could only sit, stand, walk and drive for one hour during an eight hour work day as she "is unable to sustain on any predictable schedule". *[ar. at 0714]*. Dr. Shah further opined that Ms. Kenny had low abilities in mental alertness and dealing with stress/pressure due to the inability to "perform on any scheduled basis" and concluded that she was unable to work even irregular hours or perform variable types of work. *[ar. at 0715]*. Dr. Shah's office notes between November 21, 2000 and November 6, 2001 were submitted in support of the RFC. *[ar. at 0764-0765]*. On September 17, 2001, Ms. Kenny was objectively diagnosed with osteopenia at the North Shore Medical Center. *[ar. at 0765-0767]*. Additionally, Ms. Kenny was treated at the Allergy & Asthma Affiliates by Andrew Ober, MD, a Board Certified Allergist and Immunologist, on November 20, 2001 and December 18, 2001 for chronic seasonal and perennial allergic rhinosinusitis and mild episodic asthma. *[ar. at 0809-0810]*. On May 10, 2002, Mary Mewar, DC, the treating chiropractor of 10 years, opined to the defendant, John Hancock, that "under chiropractic care, Mrs. Kenny's myalgia and headaches have been lessened but for only brief periods (1 to 2 days) following treatment. Now her condition has ben(sic) lessened (7 to 10 days) due to chiropractic care. These short reprieves are intermittent and Mrs. Kenny's overall condition has failed to improve in general. Ms. Kenny is still unable to perform even light, sedentary part time work in light of the fact she has decreased concentration, inability to sit/stand or walk for more than a few minutes at this time.

6

Atteempts(sic) at increasing her daily activities has lead to frequent exacerbation of her symptoms. The unpredictability of the severity, variety and frequency of the numerous CFS symptoms prohibit her from planning and engaging in any work activity, even light sedentary employment. She continues to be treated on a symptomatic basis in my office and her care is not considered restorative or maintenance in nature. *[ar. at 0775-0756 ]*. On November 15, 2002, Dr. Shah again at the behest of Defendants stated that Ms. Kenny was disabled "due to unpredictability of frequency – severity of symptoms, unable to engage in any repetitive activity or regularly scheduled activity, unable to sustain any activity or adhere to any employment schedule" and further reiterated the restrictions set forth in the prior August 9, 2001 RFC. *[ar. at 0713-0715]*. The Administrative Record further contains Dr. Shah's office notes from July 5, 2002 until October 23, 2002 in support of the opinion rendered. *[ar. at 0821-22]*.

Unhappy with the opinions of the treating physicians and the independent medical examiners, the Defendants had Ms. Kenny's medical records reviewed by, Scott M. Yarosh, MD, a psychiatrist and owner of Behavioral Management, Inc. of Minneapolis, Minnesota, a corporation specializing in medical reviews for insurance companies. *[ar. at 0891-0900]*. On February 4, 2003 Dr. Yarosh concluded that "[b]ased on the review of medical records, there is no objectively quantifiable medical condition, which would render Ms. Kenny as impaired as she has alleged. There are numerous subjective complaints and a lack of objective findings to substantiate with those complaints. What is notably missing from her evaluation is a thorough psychological assessment including personality testing and assessment as well as psychiatric evaluation. I think that Ms. Kenny's underlying condition is largely psychiatric. In my opinion, based on information in the records, there may be a component of depression and anxiety. ... **It is impossible to ascertain for sure whether she is able to return to work without benefit of a**

7

**direct examination.**[1] However, the medical records do not demonstrate sufficient objective data to justify the level of impairment claimed in the Attending Physician Statements. Her impairment has been based primarily on, and, in fact, findings at face value as opposed to more critically examining personality factors or psychological processes, which may accompany the presentation of somatic symptoms. Given that disability decisions need to be made based upon objective evidence, I do not find any objective evidence to indicate why Ms. Kenny cannot perform the duties of her occupation. *[ar. at 0899-0900]*. On March 13, 2003, at Dr. Yarosh's behest, Dr. Shah provided a statement to Dr. Yarosh at Behavioral Management stating that Ms. Kenny's diagnoses are chronic fatigue syndrome, osteopenia, asthma and fibromyalgia with a treatment plan of activity as tolerated, with frequent bed rest as needed, avoid exertion, continue chiropractic treatment, ice therapy with a guarded prognosis for recovery/return to work. *[ar. at 0956-57]*. Dr. Shah further set forth **objective** findings in support of her previously submitted RFC's, which were: elevated Epstein Barr virus titers, a positive symptom checklist and positive fibromyalgia trigger points. *[tr. at 0956]*.

**- Benefits were terminated on June 2, 2003.**

The Administrative record contains the following medical evidence which was provided to the Defendants by Ms. Kenny along with the appeal of the termination of her disability benefits.

Ms. Kenny was examined by Robert Pastan, MD, a board certified rheumatologist, on September 11, 2003 and October 28, 2003, who objectively noted tender trigger sites on her neck, and shoulders and confirmed the diagnosis of Chronic Fatigue Syndrome/ Fibromyalgia.

---

[1] Emphasis Added

*[ar. at 0988-89]*. On October 8, 2003, Dr. Medwar reaffirmed the medical opinion letter she submitted to the Defendants on May 10, 2002, which disabled Ms. Kenny from substantial gainful activity. *[ar. at 0990-91]*. Ms. Kenny further sought treatment with Glenn Rothfeld, MD a nutrition specialist at WholeHealth New England from April 29, 2003 through at least October 7, 2003 undergoing IV medication treatments. *[ar. at 0993-1014]*. Dr. Rothfeld opined that Ms. Kenny was 100% disabled and "meets the criteria for diagnosis for fibromyalgia. She requires frequent medical visits which would interfere with working even part time. *[ar. at 0992]*. On September 30, 2003, Dr. Shah after a ten year treating history of Ms. Kenny completed both a detailed physical and mental residual functional capacity questionnaire opining to the follow:

- 2.) Diagnosis: *chronic fatigue syndrome, fibromyalgia, irritable bowel syndrome, asthma, osteopenia*;

- 11.) Are your patient's impairments (physical impairments plus any emotional impairments reasonably consistent with the symptoms and functional limitations described in this evaluation? *Yes*;

- 12.) How often is your patient's experience of pain and other symptoms severe enough to interfere with attention and concentration? *Frequently*;

- 13.) Multiple questions to Ms. Kenny's physical functional limitations were answered by Dr. Shah that they would vary due to irregular and unpredictable nature of illness;

- 13.l.) Are your patient's impairments likely to produce "good days" and "bad days"? *Yes*; If yes, please estimate, on the average, how often your patient is likely to be absent from work as a result of the impairment or treatments: *More than for times a month*; *[ar. at 1016-21]*.

- Dr. Shah further opined that Ms. Kenny had marked limitations in the following areas:

    a.) the ability to maintain attention and concentration for extended periods;

    b.) the ability to perform activities within a schedule, maintain regular attendance,

9

and be punctual within customary tolerances;

c.) the ability to sustain an ordinary routine without special supervision;

d.) The ability to work in coordination with or proximity to others without being distracted by them. *[ar. at 1022]*.

Dr. Shah's progress notes from October 25, 2002 through July 28, 2003 were additionally submitted to support her opinions of Ms. Kenny's level of functioning. *[ar. at 1029-32]*.

## STANDARD OF REVIEW

A participant of an ERISA-governed plan can bring an action "to recover benefits due" to her under the terms of her plan, to enforce her rights under the terms of her plan, or to clarify her rights to future benefits under the terms of the plan. *Chandler v. Raytheon Employees Disability Trust and Metropolitan Life Insurance Company, 53 F.Supp. 84 (D. MA 1999) quoting ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).* ERISA abounds with the language and terminology of trust law and the United States Supreme Court has stated that "consistent with established principles of trust law, we hold that a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. et al v. Bruch, 489 U.S. 101, 115 (1989). Also see Recupero v. New England Telephone and Telegraph Co. Et Al; 118 F.3d 820, 826 (1st Cir. 1997).* The First Circuit has recognized the authority of the district court "to be less deferential, or not deferential at all, of out-of-court decisions by fiduciaries to whom a benefit plan did not grant discretionary authority to decide the matter at issue. *Recupero at 828.* "Where, as here, the administrator of an ERISA-regulated plan does not allege that it has discretion under the plan to interpret the terms of the insurance policy, judicial review of a denial of benefits entails no deference to the

10

administrator's explanation of the plan …" *Recupero* at 828 quoting *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 267 (1st Cir. 1994). Where nothing in the Plan indicates that another approach is to be used, it is appropriate for a reviewing court to afford de novo review. *Recupero at 828 citing Allen v. Adage Inc.*, 967 F.2d 695, 697-98 (1st Cir. 1992). The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since the party claiming deferential review should prove the predicate that justifies it. *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir. 1995). "We do not want to encourage an employer to insulate himself from effective appellate review through the abuse of vague phrases that fail to make clear to the employees that the employer will have the final determination of benefit decisions. Employees who lose promised benefits should not lose the additional benefit of judicial review because their employer reserved discretionary power to itself without making that reservation clear." *Bogue v. Ampex Corp., 976 F.2d 1319, 1325 (9th Cir. 1992).* Furthermore, the de novo standard applies to all issues arising when an ERISA claim denial is challenged under section 1132(a)(1)(B), including fact issues. *See Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176 (3rd Cir. 1991); *Reinking v. Philadelphia American Life Insurance Co.*, 910 F.2d 1210 (4th Cir. 1990); *Donato v. Metropolitan Life Insurance Co.*, 19 F.3d 375 (7th Cir 1994). "A district court conducting a de novo review of an administrator's benefits determination is not limited to the facts available to the administrator at the time of the determination" and held that "a district court may consider the Social Security Administration's determination of benefits." *Kirwan v. Marriott Corporation*, 10 F.3d 784 (11th Cir. 1994).

The relevant long term disability policy which was last amended in 1991 states "total disability shall mean only such complete incapacity, resulting from accidental bodily injury and sickness, as prevents the employee from performing any and every duty of any occupation or employment for which he is reasonably qualified by education, training or experience." *[ar. at*

*0051, 0218]*. Nowhere in the policy or it amendments does the defendant John Hancock grant itself the discretionary authority to interpret the terms of the policy or determine the eligibility for disability benefits and without such a grant of authority the Court's review is de novo.

Notwithstanding whether or not the insurer defendant granted itself broad discretionary authority, the Court's review of the termination of Ms. Kenny's would be de novo. Specifically, if the insurer fails to render a decision within the requirements set forth in the ERISA statute the application is "deemed denied on review". *20 C.F.R. §2560.503-1(h)*. "When substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial de novo, even if the plan administrator has discretionary authority to decide claims." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 *(10th Cir. 2003)*. "[T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion. It follows that where the plan and applicable regulations place temporal limits on the administrator's discretion and the administrator fails to render a final decision within those limits, the administrator's 'deemed denied' decision is by operation of law rather than the exercise of discretion, and thus falls outside the Firestone exception. When the administrator fails to exercise his discretion within the required timeframe, the reviewing court must apply Firestones's default de novo standard." *Id at 631-632. Also see Gritzer v. CBS, Inc., 275 F.3d 291 (3rd Cir. 2002); Seman v. FMC Corporation Retirement Plan For Hourly Employees, 334 F.3dd 728 (8th Cir. 2003); Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan, 349 F.3d 1098 (9th Cir. 2003).*

Considering the facts most favorable to the Defendants, Ms. Kenny submitted the last medical records to the Defendant's in support of her appeal on December 1, 2003 requiring an

answer on her appeal by January 29, 2004 or it would be deemed denied under the provisions of the ERISA Act. Specifically 29 C.F.R. §2560.503-1(h)(1)(i) (1998) required an insurer to respond to an appeal within 60 days[2]. Prior to filing suit on June 14, 2004 neither Defendant had issued a response to Ms. Kenny appeal therefore the proper standard of review is de novo.

Additionally, the proper course is for the District Court to decide the issue of disability not remand the claim back to the insurer for further development. Specifically, "when a plan administrator fails to render any decision whatsoever on a participant's application for benefits, it leaves the courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision. When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be de novo rather than for abuse of discretion if the review panel's inaction raises serious doubts about the administrator's decision. _Seman_ at 733.

## **LEGAL ARGUMENT**

"Both the statute and the ERISA regulations require that the plan administrator provide a claimant with the specific reasons for its denial of a claim. ERISA provides that: 'In accordance with regulations of the Secretary, every employee benefit plan shall ... provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant ..." _Glista v. UNUM Life Ins. Co., 378 F.3d 113, 128 (1st Cir. 2004) quoting 29 U.S.C. §1133._ The Department of Labor's implementing regulations require

---

[2] Congress has since shortened this appeal processing period to 45 days.

that the initial notice of a claim denial contain:

    (1) The specific reason or reasons for the denial;

    (2) Specific reference to pertinent plan provisions on which the denial is based;

    (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

    (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review. *Glista at 128-129 quoting 29 U.S.C. §2650.503-1(f)*.

The regulations also require that decisions in subsequent internal appeals 'include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent plan provisions on which the decision is based." *Glista at 129 quoting 29 U.S.C. §2650.503-1(h)(3)*. "Those goals are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary. Such conduct prevents ERISA plan administrators and beneficiaries from having a full and meaningful dialogue regarding the denial of benefits. *Glista at 129 citing Juliano v. The Health Maint. Org. of N.J., Inc., 221 F.3d 279, 288 (2d Cir 2000)*. Considering the above, the Defendants stated reason for terminating benefits was:

> "After reviewing your file, the Neuropsychiatry and Internal Medicine
> doctor assessed that the documentation in the file fails to reveal
> an ongoing, active Rheumatologic problem and also failed to reveal
> an ongoing infectious problem. The doctor also noted that there were
> numerous subjective complaints and a lack of medical information
> to substantiate those complaints and that the documentation did
> not demonstrate sufficient data to justify the level of impairment
> claimed on the Attending Physician Statement. The doctor further
> assessed that many treating Physicians have taken your subjective
> findings at face value as opposed to more critically examining
> personality factors or psychological process, which may accompany
> the presentation of somatic symptoms. Additionally, the doctor noted
> that the surveillance video clearly shows you engaging in activities,

which you state are very difficult for you to complete. Finally, the doctor concluded that given the fact that disability decisions need to be made based upon documented medical information, he did not find any documented medical data to indicate why you cannot perform the duties of your own occupation. ... In conclusion, the surveillance reports dated September 2001 and February 2003 show that your doctor's assessment of your physical capabilities and functionality is inaccurate, and the comprehensive peer review supports that assessment. As he noted in his report, many of your treating have taken your subjective findings at face value and that there was not documented medical information to support that you cannot perform the duties of your own occupation. Therefore, we have determined that you are able to return to work immediately in a full-time, sedentary or light occupation for which you are qualified by your education, training and experience, including your own occupation and that you are not disabled as required by your Group Policy. As a result of our decision that your are not Disabled, we are terminating payment of your LTD Benefits. [ar. at 0968-69].

Therefore, the Defendants stated reason for the termination of benefits can be summarized as follows. Ms. Kenny is not disabled based upon: a.) the opinion of paid non-examining psychiatrist specializing in insurance company reviews who concluded that the file lacked objective evidence of a disabling impairment and b.) the surveillance films of a private investigator allegedly showing Ms. Kenny exhibiting the ability to perform substantial gainful activity on two separate days. Ms. Kenny states that both stated reasons are unreasonable and pretextual for denying benefits. Ms. Kenny addresses each reason separately:

**a.)      Ms. Kenny is not disabled based upon the opinion of paid non-examining psychiatrist specializing in insurance company reviews who concluded that the file lacked objective evidence of a disabling impairment.**

**a.1.) <u>It is unreasonable for the Defendants to require objective evidence for the level of impairment pertaining to Chronic Fatigue Syndrome.</u>**

The Notice of Termination stated the Ms. Kenny has failed to provide objective evidence of a disabling impairment and that a psychiatrist in Minnesota determined that every doctor who had personally examined her and concluded she was disabled had based their opinions solely on her unsupported subjective complaints. Ms. Kenny states that the Defendants unreasonably demand objective evidence for a predominately subjectively diagnosed impairment after eleven years of not requiring such medical evidence, which is behavior which the Courts have found to be unreasonable and a violation of the ERISA Act even under the arbitrary and capricious standard of review. Specifically, the Court of Appeals for the First Circuit has concluded that imposing an objective proof requirement on an insured suffering with chronic fatigue syndrome is unreasonable and further expressed a preference for the opinions of treating physicians due to the nature of the impairment. *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11 (1st Cir. 2/5/03). Also see *Russell v. UNUM*, 40 F.Supp.2d 747 (D. SC 1999); *Barone v. UNUM Life Insurance Co. of America*, 186 F. Supp.2d 777, 786 (E.D. Mich. 2002); *Davidson v. Kemper Nat'l Servs., Inc.*, U.S.Dist.LEXIS 20198 (W.D. Va. 10/10/2002); *Morgan v. UNUM Life Insurance Co. of America*, 2002 U.S. Dist.LEXIS 17663 (D. Minn. 9/16/02); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 442-43 (3rd Cir 1997); *Wilkins v. Hartford Life & Acc. Ins. Co.*, 299 F.3d 945, 947 n.1 (8th Cir. 2002). A Rhode Island District Court concluded that objective evidence is not always "a true monitor of how much pain a patient feels, and are not central to treatment of people with plaintiff's condition", therefore the defendant's demands for such evidence is pretextual and unreasonable. *Grady v. The Paul Revere Life Ins. Company*, 10 F.Supp.2d 100, 115 (D. RI 1998). A diagnosis turning on subjective information does not necessarily mean that a condition is less debilitating than one objectively diagnosed, and does not permit a plan administrator unbridled discretion to deny such claims. *Laser v. Provident Life & Accident Insurance Co.*, 211 F.Supp. 2d 645, 656 (D. Md. 2002). Additionally, a New Hampshire District Court concluded a denial of benefits for lack of objective medical evidence

improper where the disorder was such that it could not be objectively diagnosed. *Logue v. Reliance Standard Life Insurance Co., 2002 U.S. Dist.LEXIS 10163 (D. NH 6/4/2002)*. A Pennsylvania District Court also concluded that even in the absence of objective evidence of disability, claimant's can still prevail on claims involving an impairment with mainly subjective symptoms. *Dorsey v. Provident Life and Accident, 167 F.Supp.2d 846 (E.D. Pa. 2001)*. Also see *Brenner v. Hartford Life & Accident Insurance Co., 2001 WL 224826 (D. Md. 2/23/2001); Holzschuh v. UNUM, 2002 U.S.Dist.LEXIS 13205 (E.D. Pa. 2002); Thorpe v. Continental Casualty Company, 2002 U.S.Dist.LEXIS 24405 (E.D. Pa. 12/18/02)*.

Therefore, the Defendants' requirement that Ms. Kenny provide objective evidence that chronic fatigue syndrome is a disabling impairment was improper as it clearly was set to establish a policy provision that she could not meet and allow the termination of benefits. Additionally, the Defendants made a critical error in that they failed to explain to Ms. Kenny how the same evidence that she had presented during every prior review in the eleven years she had collected benefits had now become objectively insufficient under the same policy. Also, when the Insurer deemed the above medical evidence insufficient "objectively" it breached its fiduciary duty to Ms. Kenny by failing to set forth the specific objective evidence that was missing or deficient which would satisfy the insurer as ERISA requires the insurer provide "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." *29 CFR §2560.503-1(g)(iii)*. The administrative record is completely devoid of the Insurer directly notifying Ms. Kenny of what specific "objective evidence" was necessary to prove chronic fatigue syndrome "objectively" disabling.

Furthermore, the Defendants ignored that Ms. Kenny's treating physicians and prior independent medical examiners had informed them of objective evidence which supported the

17

diagnosis of disabling chronic fatigue syndrome. Specifically, Dr. Shah in direct response to the reviewing psychiatrist's request for information stated that elevated Epstein Barr virus titers, positive symptom checklist and positive fibromyalgia trigger points **objectively** supported her opinion as to Ms. Kenny's level of functioning. *[tr. at 0956]*. Additionally, with her appeal Ms. Kenny submitted treatment notes of Robert Pastan, MD, a board certified rheumatologist, who **objectively** noted tender trigger sites on her neck, and shoulders and confirmed the diagnosis of Chronic Fatigue Syndrome/ Fibromyalgia. *[ar. at 0988-89]*.

Therefore, not only is the insurer's conclusion that Ms. Kenny's level of impairment not objectively supported unreasonable due to the nature of her medical impairment, but she was able to provide objective evidence appropriate to her impairment to the Defendants which they promptly ignored.

### a.2) The Defendant misstates its medical reviewer's conclusion which it cites as the basis for the termination of benefits.

In contradiction of all other medical opinions including the Defendant's prior examining medical experts, the insurer's medical reviewer, Dr. Yarosh, concluded that Ms. Kenny potentially suffers from a mental disorder not chronic fatigue syndrome, which could be expected as he is a psychiatrist and not an expert in chronic fatigue syndrome. The Defendants never explained why Ms. Kenny's medical records were sent to Minnesota for review by a psychiatrist versus having her be examined by a local chronic fatigue syndrome expertsas was required in the past. Ms. Kenny proffers that the Insurer was unreasonably fishing for a "not disabled" opinion from a source specializing in insurance reviews and would not open itself to another decision which would require payment under the policy as had happened when Dr.

Felsestein had examined her. Therefore, Ms. Kenny believes that the Insurer's reliance on a non-examining doctor who is not certified in the treatment of her impairment is unreasonable. In a very similar case involving fibromyalgia, a Rhode Island District Court commented, "while the defendant had no duty to do so, it did have the right to order an independent medical examination of plaintiff. [The non-examining reviewer's] failure to recommend such an examination strongly suggests that his findings as to plaintiff's condition were pretextual." _Grady_ _at 115._.

Additionally, a report of a doctor who did not examine an applicant "lacks the assurance of reliability that comes ... from first-hand observation and professional examination" and cannot provide substantial evidence. _Browne v. Richardson, 468 F.2d 1003, 1006 (1st Cir. 1972)._ Furthermore, "[t]o rely solely upon the conclusory and unexplained opinion of a medical doctor who did not examine the plaintiff, and who had no evidence before him to substantiate his finding that plaintiff was not totally disabled, and to disregard credible contradictory evidence from plaintiff's own treating physician is irrational." _Pierce v. American Waterworks Company, Inc., 693 F.Supp. 996 (W.D.P.A. 1988); Also see Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130 (9th Cir. 2001); Donaho v. FMC Corp, 74 F.3d 894, 901 (8th Cir. 1996)._ The medical records overwhelmingly support the diagnosis of chronic fatigue syndrome and Ms. Kenny's level of impairment is undisputed by any medical source who had examined or even conversed with her, which clearly establishes that the termination of benefits was unreasonable. What is even more unreasonable is the Defendants stating in the termination notice that Dr. Yarosh found her condition (whatever his diagnosis) not disabling when he directly admits in his narrative that **"[i]t is impossible to ascertain for sure whether she is able to return to work without benefit of a direct examination."** _[ar. at 0900]_. Although Dr. Yarosh further states that he sees no objective proof contained within her file and believes that her doctors were accepting her subject complaints at face value he failed to state what objective evidence he was looking for aside of a psychological assessment and further failed to state on

19

what he based his conclusion that Ms. Kenny duped her treating physicians and independent medical examiners. A reviewing physician must support his opinion that the Plaintiff exaggerated her claims of pain which in turn invalidated the treating physician's opinion. *See Milgliaro v. IBM Long-Term Disability Plan, 231 F.Supp. 2d 1167, 1179 (M.D. Fla. 2002).* Additionally, an insurer must develop its position that that the treating physician exaggerates the extent of the claimant's disability in support of the insured receiving benefits. *Curtain v. UNUM Life Ins. Co., 298 F.Supp. 2d 149, 157-158 citing Cook at 23.* Additionally, Ms. Kenny finds it disturbing that Dr. Yarosh appears to have been coached in his narrative versus rendering an independent medical review. Specifically, the good doctor states that although he cannot determine if Ms. Kenny is disabled without examination, he conversely states that "given that disability decisions need to be made based upon objective evidence, I do not find any objective evidence to indicate why Ms. Kenny cannot perform the duties of her occupation". *[ar. at 0899-0900].* It appears that instead of reviewing her medical condition and suggesting further medical work up if her impairment was ambiguous, he seems to have molded his final conclusion to the insurer's desire to terminate benefits by stating how disability decisions are rendered under the policy and criteria necessary to qualify under the policy.

Therefore, Ms. Kenny sets forth that the medical evidence clearly supports her continuing disability under the policy as all medical sources, except the report of a psychiatrist who admits he can not conclude if she is disabled without examination, opine to her inability to work.

**b.) The Defendant's surveillance videotapes are unpersuasive and record Ms. Kenny functioning within the restrictions set by the medical experts.**

Video surveillance detailing a small period of a claimant activity cannot be used as a

reason to terminate benefits if it does not reveal something extraordinary, is supported by additional medical evidence conflicting with the claimant's treating physician or establishes the plaintiff can substantially perform a job. *See Milgliaro v. IBM Long-Term Disability Plan, 231 F.Supp. 2d 1167, 1178 (M.D. Fla. 2002); Cunningham v. The Paul Revere Life Insurance, 235 F.Supp.2d 746, 756 (W.D. Mich 2002); Osburn v. Auburn Foundry, Inc., 293 F.Supp.2d 863, 869-871 (N.D. Id. 2003); Trolson v. AETNA, 2002 U.S. Dist. LEXIS 24825 (N.D. Cal. 2002);* The surveillance video must document that the claimant is experiencing anything but a good day. *Clausen v. Standard Insurance, 961 F.Supp 1446, 1457 (D. Colo. 1997).* "[R]elying on videotapes showing the plaintiff engaging in activities that are significantly less taxing than working ... when all other objective evidence of treating physicians and therapists confirms that the plaintiff is totally disabled ... is an abuse of discretion." *Rigby v. Bayer Corp., 933 F.Supp. 628, 634 (E.D. Tex. 1996).* "The presence, nature, and extent of some injuries or disabilities may be rebutted by surveillance evidence. For example, someone who claims to be blind may be denied recovery if surveillance reveals the complainant was driving a car or reading. But the present injury, some activity is not inconsistent with disability. *Marziale v. Hartford Life Ins. Co., 2002 WL 1359639, FN1 (E.D. La.).*

The Defendant's cites two surveillance reports as a major consideration in the termination of her disability benefits. Both reports (September 2001 and February 2003) record Ms. Kenny performing sporadic errands such attending chiropractic sessions, all limited in scope and time and do not record the ability to perform substantial gainful activity. These video tapes do not record any extraordinary activity and are consistent with her impairment. Chronic fatigue syndrome is not a static impairment but is instead an impairment in which the symptoms fluctuate significantly. The insurer was put on notice by both Ms. Kenny's treating sources and by their own medical examiners of the nature of her impairment. Specifically, Donna

Felsenstein, MD, the Director of the Genito-Infectious Disease Unit of the Massachusetts

General Hospital, stated because of the history of **unpredictability** of Ms. Kenny symptoms, it

would be difficult for her to maintain any ongoing work. *[ar. At 0571]*. Dr. Shah opined that Ms.

Kenny had low abilities in mental alertness and dealing with stress/pressure due to the inability

to "**perform on any scheduled basis**". *[ar. at 0715]*. On May 10, 2002, Mary Mewar, DC, the

treating chiropractor of 10 years, opined that "the **unpredictability** of the severity, variety and

frequency of the numerous CFS symptoms prohibit her from planning and engaging in any work

activity, even light sedentary employment. *[ar. at 0775-0756 ]*. On November 15, 2002, Dr.

Shah stated that Ms. Kenny was disabled "due to **unpredictability of frequency – severity** of

symptoms, unable to engage in any repetitive activity or regularly scheduled activity, unable to

sustain any activity or adhere to any employment schedule". *[ar. at 0713-0715]*. On March 13,

2003,. Shah stated that Ms. Kenny's diagnoses are chronic fatigue syndrome, osteopenia, asthma

and fibromyalgia with a treatment plan of activity as tolerated, with frequent bed rest as needed,

avoid exertion, continue chiropractic treatment, ice therapy with a guarded prognosis for

recovery/return to work. *[ar. at 0956-57]*. Dr. Rothfeld opined that Ms. Kenny was 100%

disabled and "meets the criteria for diagnosis for fibromyalgia. She requires frequent medical

visits which would interfere with working even part time. *[ar. at 0992]*.  On September 30, 2003,

Dr. Shah after a ten year treating history of Ms. Kenny completed both a detailed physical and

mental residual functional capacity questionnaire opining to the follow:

- 13.) Multiple questions to Ms. Kenny's physical functional limitations were answered by
  Dr. Shah that they would **vary due to irregular and unpredictable** nature of illness;

- 13.l.) Are your patient's impairments likely to produce "good days" and "bad days"? *Yes*;
  If yes, please estimate, on the average, how often your patient is likely to be absent from
  work as a result of the impairment or treatments: *More than for times a month*; *[ar. at*
  *1016-21]*.

22

Therefore, Ms. Kenny's videotaped activity is well within the opinions of all the examining medical professionals as her impairment allows her to function normally sometimes but not consistently enough to allow the performance of substantial gainful activity. The insurer has not "caught" the blind man seeing and cannot terminate benefits without establishing how her limited and sporadic activity allows for the return to full employment and does not reflect a good day.

## CONCLUSION

Mary Kenny, respectfully requests that this Honorable Court find that the Defendant's decision to cease her LTD benefits as of June 2, 2003 unreasonable, as she proffered substantial medical evidence that she was disabled from severe chronic fatigue syndrome at all times relevant to this action.

For all of the foregoing reasons, Mary Kenny, respectfully requests that her Motion for Judgment be granted and the Defendants be ordered to pay benefits retroactive to June 2, 2003.

Dated: Boston, Massachusetts

March 6, 2005

Respectfully submitted,

Michael James Kelley, Esq.
BBO# 567329
44 School Street
Boston, MA 02108
Tel: (617) 523-1450

23

Fax: (617) 523-6502