UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

Civil Action No: 04Cv11318-RCL

MARY KENNY, )
)
)
**Plaintiff,** )
v. )
)
INTEGRATED DISABILITY )
RESOURCES, Inc. and )
HANCOCK LIFE INSURANCE )
COMPANY )
)
**Defendants.** )

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT**

The Plaintiff, Mary Kenny, has received the Defendants' Motion for Judgment and submits this Opposition. Plaintiff sets forth that the Defendants have proffered the following arguments which the Plaintiff contests have no merit and require the reinstatement of benefits. Specifically:

1.) The Court is required to review this matter under the arbitrary and capricious standard;

2.) The surveillance of the Plaintiff establishes she has lied to her treating sources about the level of severity of her medical impairments;

3.) The Defendant's are able to rely on the opinion of the non-examining physician to terminate benefits;

The Plaintiff submits the following arguments in support of her contention that the Defendants' termination of her benefits is unreasonable.

**1.) The Court is required to review this matter under the de novo standard of review not the arbitrary and capricious standard as alleged by the Defendants.**

The Defendants allege that the Court is required to review this matter under the arbitrary and capricious standard, which is contrary to a significant body of case law interpreting 29 C.F.R. §2560.503-1(h)(1)(i) (1998) and the Supreme Courts decision in *Firestone Tire & Rubber Co. et al v. Bruch, 489 U.S. 101 (1989)*. Specifically, the Defendants failed to comply with 29 C.F.R. §2560.503-1 thereby waiving the arbitrary and capricious standard.

Pursuant to the Ms. Kenny's appeal of the termination of her LTD benefits, she submitted a medical records package to the defendant, Integrated DisAbility Resources on November 24, 2003. *[ar. at 0986]*. In the cover letter, Ms. Kenny stated she was awaiting the office notes of her treating chiropractor, Mary Medwar, DC, which she was never able to obtain and the defendant Integrated DisAbility Resources was notified on December 1, 2003 by fax of this fact and that she had no more medical evidence to submit. *See Attachment "A"*. Therefore, the correspondence dated December 1, 2003 triggered the 60 day appeal decision deadline (January 29, 2004) or the appeal would be deemed denied pursuant to 29 C.F.R. §2560.503-1(h)(1)(i) (1998). The Defendants have not alleged in their Motions that they ever have rendered a decision on Ms. Kenny' appeal nor is any such documentation contained within the administrative record. Therefore, when the insurer failed to render a decision within the requirements set forth in the ERISA statute the application was "deemed denied on review". *20 C.F.R. §2560.503-1(h)*. Ms. Kenny alleges that a significant body of case law interpreting *20 C.F.R. §2560.503-1(h)* conclude that the Defendants' failure render a timely decision on her appeal (or in this case any decision) waives the discretionary authority which may be set forth in the relevant policy. Specifically, "[t]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid

2

exercise of that discretion. It follows that where the plan and applicable regulations place temporal limits on the administrator's discretion and the administrator fails to render a final decision within those limits, the administrator's 'deemed denied' decision is by operation of law rather than the exercise of discretion, and thus falls outside the Firestone exception. When the administrator fails to exercise his discretion within the required timeframe, the reviewing court must apply Firestones's default de novo standard." <u>Gilbertson v. Allied Signal, Inc.</u>, 328 F.3d 625, 631-632 (10th Cir. 2003). Also see <u>Gritzer v. CBS, Inc.</u>, 275 F.3d 291 (3rd Cir. 2002); <u>Seman v. FMC Corporation Retirement Plan For Hourly Employees</u>, 334 F.3dd 728 (8th Cir. 2003); <u>Jebian v. Hewlett-Packard Company Employee Benefits Organization Income Protection Plan</u>, 349 F.3d 1098 (9th Cir. 2003).

Therefore, as the Defendants failed to exercise discretion in rendering a decision on Ms. Kenny's appeal of the termination of her LTD benefits (even if it was granted in the relevant policy) the proper standard of review is de novo.

**2.) The Defendants' deliberately disregard the nature of Ms. Kenny's chronic fatigue syndrome in relying on the surveillance of the Plaintiff in its effort to establishes she had been lying to her treating sources about the level of severity of her medical impairments.**

Ms. Kenny's contend that the Defendants' surveillance tapes of her are limited in scope and not contrary to the opinions of all the examining medical professionals as her impairment allows her to function normally sometimes but not consistently enough to allow the performance of substantial gainful activity. The insurer has not "caught" the blind man seeing and cannot terminate benefits without establishing how her limited and sporadic activity allows for the return to full employment and does not reflect a day of mild impairment (a good day).

3

In their Motion, the Defendants' call to the Courts attention multiple events reflected in the surveillance tapes which they allege contradict the treating source opinions to her residual functional capacity, but the insurer deliberately ignores that these restrictions only pertain to when the Chronic Fatigue is active (a bad day) and are not meant to be reflective of a static medical condition. Therefore, the Defendants' have not captured the blind man seeing as has been contemplated as necessary by multiple district court when considering the value of surveillance evidence without significant medical evidence to support malingering. *See Milgliaro v. IBM Long-Term Disability Plan*, 231 F.Supp. 2d 1167, 1178 (M.D. Fla. 2002); *Cunningham v. The Paul Revere Life Insurance*, 235 F.Supp.2d 746, 756 (W.D. Mich 2002); *Osburn v. Auburn Foundry, Inc.*, 293 F.Supp.2d 863, 869-871 (N.D. Id. 2003); *Trolson v. AETNA*, 2002 U.S. Dist. LEXIS 24825 (N.D. Cal. 2002); *Clausen v. Standard Insurance*, 961 F.Supp 1446, 1457 (D. Colo. 1997). *Rigby v. Bayer Corp.*, 933 F.Supp. 628, 634 (E.D. Tex. 1996). *Marziale v. Hartford Life Ins. Co.*, 2002 WL 1359639, FN1 (E.D. La.).

The Defendants will argue that Ms. Kenney is attempting to cover her activities allegedly inconsistent with being disabled by claiming that the surveillance only captured a good days. The First Circuit Court of Appeals has recognized the sporadic and unpredictable nature of Chronic Fatigue Syndrome and and expressed a preference for the opinions of treating physicians due to the nature of the impairment. *Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11 (1st Cir. 2/5/03). Most importantly, the insurer was put on notice by both Ms. Kenny's treating sources and by their own medical examiners of the nature of her impairment was sporadic and unpredictable. Specifically:

- Donna Felsenstein, MD, the Director of the Genito-Infectious Disease Unit of the Massachusetts General Hospital, stated because of the history of **unpredictability** of Ms.

4

Kenny symptoms, it would be difficult for her to maintain any ongoing work. *[ar. at 0571].*

- Dr. Shah opined that Ms. Kenny had low abilities in mental alertness and dealing with stress/pressure due to the inability to "**perform on any scheduled basis**". *[ar. at 0715].*

- On May 10, 2002, Mary Mewar, DC, the treating chiropractor of 10 years, opined that "Mrs. Kenny's myalgia and headaches have been lessened but for only brief periods (1 to 2 days) following treatment. Now her condition has ben(sic) lessened (7 to 10 days) due to chiropractic care. **These short reprieves are intermittent** and Mrs. Kenny's overall condition has failed to improve in general. ... **the unpredictability of the severity, variety and frequency of the numerous CFS symptoms** prohibit her from planning and engaging in any work activity, even light sedentary employment. *[ar. at 0775-0756 ].*

- On November 15, 2002, Dr. Shah stated that Ms. Kenny was disabled "due to **unpredictability of frequency – severity** of symptoms, unable to engage in any repetitive activity or regularly scheduled activity, unable to sustain any activity or adhere to any employment schedule". *[ar. at 0713-0715].*

- On March 13, 2003,. Shah stated that Ms. Kenny's diagnoses are chronic fatigue syndrome, osteopenia, asthma and fibromyalgia with a treatment plan of activity as tolerated, with frequent bed rest as needed, avoid exertion, continue chiropractic treatment, ice therapy with a guarded prognosis for recovery/return to work. *[ar. at 0956-57].*

- Dr. Rothfeld opined that Ms. Kenny was 100% disabled and "meets the criteria for diagnosis for fibromyalgia. She requires frequent medical visits which would interfere with working even part time. *[ar. at 0992].*

- On September 30, 2003, Dr. Shah after a ten year treating history of Ms. Kenny completed both a detailed physical and mental residual functional capacity questionnaire opining that Ms. Kenny's **physical functional limitations would vary due to irregular and unpredictable** nature of illness; *[ar. at 1016-21]*.

Ms. Kenny's argues that the Defendants' deliberatively ignore the nature of her illness and attempt to confuse the Court with the argument that the treating source restrictions and limitations reflect a static physical impairment, which was based upon lies proffered in an attempt to collect benefits. The Defendants wrongfully argue that they have caught the blind man seeing when the have just recorded Ms. Kenny functioning within the parameters of the opinions of every medical professional who has examined her. Furthermore, the Defendants have failed to equate the actions of the surveillance tapes with a full time employment position. The Administrative Record lacks the any opinion from a vocational expert quantifying or equating the activities recorded by surveillance to a specific employment position.

**3.) The Defendants' cannot rely on the opinion of the non-examining psychiatrist as his diagnostic opinion is without explanation, contrary to every other medical opinion within the Administrative Record. The Defendants further misstate this misguided opinion as pretext to terminate benefits.**

The Administrative Record contains multiple opinions that Ms. Kenny is totally disabled, but the Defendants disregarded those opinions and instead chose to terminate benefits based on the opinion of Scott M. Yarosh, MD, a non-examining psychiatrist, which is clear error. The Defendants cite many different parts of Dr. Yarosh's narrative in its Motion for Judgment but noticeably ignore his statement that "**[i]t is impossible to ascertain for sure whether she is**

6

**able to return to work without benefit of a direct examination.**[1]. *[ar. at 0899-0900]*. Ms. Kenny alleges that the Defendants' cannot render a reasonable decision to terminate benefits based upon Dr. Yarosh's narrative when he placed them on direct notice that a proper review of her medical impairment required a direct examination.

Additionally, The Defendants have never explained why Ms. Kenny's medical records were sent to Minnesota for review by a psychiatrist versus having her examined by a physician who is Board Certified in infectious diseases, which can only be explained with the knowledge that when the insurer had twice before sent her to such trained professionals they returned opinions that she was totally disabled. Although Ms. Kenny recognizes that the Insurer is not required to accept the treating physician's opinion without question, she states that the Insurer's medical reviewer must have some basis to support his opinion. Ms. Kenny alleges that in the review of her medical records Dr. Yarosh's opinion is so far outside all the medical opinions of every other medical source, including the Defendants' prior medical reviewers, that it is unreasonable for the Defendants to use it in terminating benefits. Specifically, Dr. Yarosh, concluded that Ms. Kenny potentially suffers from a mental disorder not chronic fatigue syndrome, which leads her to ask what training Dr. Yarosh has in the diagnosis and treatment of CFS. The Courts have "[t]o rely solely upon the conclusory and unexplained opinion of a medical doctor who did not examine the plaintiff, and who had no evidence before him to substantiate his finding that plaintiff was not totally disabled, and to disregard credible contradictory evidence from plaintiff's own treating physician is irrational." *Pierce v. American Waterworks Company, Inc.*, 693 F.Supp. 996 (W.D.P.A. 1988); *Also see Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001); *Donaho v. FMC Corp*, 74 F.3d 894, 901 (8th Cir. 1996). A reviewing physician must support his opinion that the Plaintiff

---

[1] Emphasis Added

7

exaggerated her claims of pain which in turn invalidated the treating physician's opinion. *See Milgliaro v. IBM Long-Term Disability Plan*, 231 F.Supp. 2d 1167, 1179 (M.D. Fla. 2002). Additionally, an insurer must develop its position that that the treating physician exaggerates the extent of the claimant's disability in support of the insured receiving benefits. *Curtain v. UNUM Life Ins. Co.*, 298 F.Supp. 2d 149, 157-158 citing *Cook* at 23.

## **CONCLUSION**

Mary Kenny, respectfully requests that this Honorable Court find that the Defendant's decision to cease her LTD benefits as of June 2, 2003 unreasonable, as she proffered substantial medical evidence that she was disabled from severe chronic fatigue syndrome at all times relevant to this action.

For all of the foregoing reasons, Mary Kenny, respectfully requests that her Motion for Judgment be granted and the Defendants be ordered to pay benefits retroactive to June 2, 2003.

Dated:  Boston, Massachusetts

March 6, 2005

Respectfully submitted,

Michael James Kelley, Esq.
BBO# 567329
44 School Street
Boston, MA 02108
Tel: (617) 523-1450
Fax: (617) 523-6502

8

# Attachment

# "A"

LAW OFFICES OF
# MICHAEL JAMES KELLEY

*Office Hours*
44 School Street; 6th Floor
Boston, Massachusetts 02108

(617) 523-1450
(617) 523-6502 (Facsimile)
NEDisability@AOL.Com (Email)

*Reply to*
167 Milk Street, Suite 428
Boston, Massachusetts 02109

December 1, 2003

Integrated Disability Resources, Inc.
Atten: Diane Fairbanks
PO Box 754
Windsor, CT 06095

**Re:    Mary Kenny**
**SSn #: 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**
**Employer: John Hancock**

Dear Ms. Fairbanks:

    It appears that the treating chiropractor Mary Medwar, DC does not keep office notes of her frequent treatments of Ms. Kenny as a medical doctor would. Therefore, we have submitted a full package in support over her claim of continuing total disability.

    Please contact this office for any clarifications that you may require.

Very truly yours,

Michael James Kelley, Esq.

MJK/mso

```
                        TRANSACTION REPORT
                                              DEC-01-2003 11:23 AM
       FOR: MICHAEL J KELLEY               617 525 6582
   ================================================================
       SEND

   DATE    START      RECEIVER              PAGES    TIME    NOTE
   ================================================================
   DEC-01  11:22 AM  18607695596              2     1'14"    OK
   ----------------------------------------------------------------
   ****************************************************************
```

## Certificate of Service and Rule 7.1 Certificate

I hereby certify that a copy of the foregoing Motion and Memorandum have this day been mailed first class mail to defendant's attorney.

*Michael James Kelley, Esq*

March 14, 2005